## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LINDA M. DODD, AARYN JOHNSON,
REGGIE HOLDER, GLORIA GARCIA,
ROCHELLE KRUGLER, LISA SHERIDAN,
MYRIAM CORREA, SCOTT GERMAN, and
ANN-MARIE CARLSON, individually and on
behalf of all others similarly situated,

                    Plaintiffs,

     v.

ADVANCE MAGAZINE PUBLISHERS INC.,
d/b/a CONDÉ NAST,

                    Defendant.

Case No. 1:21-cv-08899-RA

**FIRST AMENDED CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

On behalf of themselves and all others similarly situated, Plaintiffs Linda M. Dodd,

Aaryn Johnson, Reggie Holder, Gloria Garcia, Rochelle Krugler, Lisa Sheridan, Myriam Correa,

Scott German, and Ann-Marie Carlson (collectively, "Plaintiffs") allege the following based

upon personal knowledge as to themselves and their own acts, and upon information and belief

as to all other matters based upon the investigation conducted by and through their attorneys.

Plaintiffs believe that substantial evidentiary support exists for the allegations set forth herein.

### NATURE OF ACTION

1.      Defendant Advance Magazine Publishers Inc., d/b/a Condé Nast ("Condé Nast"

or "Defendant") is an international media company that publishes some of the most widely

circulated magazines in the United States, including *GQ*, *The New Yorker*, *Vanity Fair*, *Vogue*,

*Glamour*, *Allure*, and *Lucky*.

2.      Defendant derives revenue in at least two ways:  First, it sells subscriptions to its

magazines to consumers; and second, it sells the identities of its magazine subscription

consumers ("Data Brokerage Products") to various third parties, including data miners, data

aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and/or list brokers, among others ("Data Brokerage Clients").

3.      The Data Brokerage Products that Condé Nast sells, licenses, rents, exchanges, and otherwise discloses to its Data Brokerage Clients contain its customers' specific identities, including their full names, titles of magazine publications subscribed to, home addresses, and myriad other categories of individualized data such as each customer's gender, ethnicity, and religion.

4.      By licensing, renting, exchanging, or otherwise disclosing—rather than only selling—its magazine subscribers' identities, Condé Nast is able to misappropriate (and profit from) their identities time and time again to countless third parties.

5.      Condé Nast's disclosure of names and identities and other individualized information is not only unlawful but is also dangerous, because it provides malevolent actors with the tools needed to target particular members of society.

6.      By selling products to its Data Brokerage Clients comprised entirely of its magazine subscribers' identities—without their consent—Defendant has violated, and continues to violate, statutes governing the misappropriation of individuals' names, identities, and/or likenesses in the states of Alabama, California, Indiana, Nevada, Ohio, South Dakota, and Washington, as well as the Commonwealth of Puerto Rico.

<strong><u>PERTINENT STATUTORY SCHEMES</u></strong>

### I.  Alabama

7.      The Alabama Right of Publicity Act states that: "any person or entity who uses or causes the use of the indica of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise or services … without consent shall be liable under this article to that person, or to a holder of that person's rights."  Ala. Code § 6-5-772(a) (the "Alabama Statute").

8.      Indica of identity "include[s] those attributes of a person that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or more of those attributes."  Ala. Code § 6-5-771(1).

## II.      California

9.      California's misappropriation of name or likeness statute, Cal. Civ. Code § 3344 (the "California Statute"), states that: "Any person who knowingly uses another's name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable … to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use[.]" Cal. Civ. Code § 3344 (the "California Statute").

10.      Notably, California Civil Code Section 3344 was amended in 1984 to include the phrase (appearing in the statutory text quoted above) "on or in products, merchandise, or goods" as an additional way in which an unauthorized use of a person's name or likeness violates the statute.  *See* Stats. of 1984, Ch. 1704, §2 at 6172.  In making this amendment, the California legislature sought to prohibit the use of a person's name on or in a product, good, or piece of merchandise, rather than simply in an advertisement for another product or service.  *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 801-02 (Cal. 2001).

## III.      Indiana

11.      Indiana's misappropriation statute, IC 32-36-1-1, *et seq.* (the "Indiana Statute"), states that: "A person may not use an aspect of a personality's right of publicity for a commercial purpose … without having obtained previous written consent."  IC 32-36-1-8(a).

12.      Under the Indiana Statute, "commercial purpose" is defined as, *inter alia*, "the use of an aspect of a personality's right of publicity … [o]n or in connection with a product, merchandise, goods, services, or commercial activities."  IC 32-36-1-2.

### IV.    Nevada

13.     Nevada's misappropriation statute, Nev. Rev. Stat. Ann. § 597.770, *et seq.* (the "Nevada Statute"), states that: "There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime."  Nev. Rev. Stat. Ann. § 597.790.

14.     Under the Nevada Statute: "Any commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]"  Nev. Rev. Stat. Ann. § 597.790.

15.     "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

### V.    Ohio

16.     Ohio's misappropriation statute, Ohio Rev. Code § 2741.01, *et seq.* (the "Ohio Statute"), states that: "a person shall not use any aspect of an individual's persona for a commercial purpose"  unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B).

17.     The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  *Id.* §2741.01(A).

18.     "'Name' means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual." *Id.*

19.     "'Commercial purpose' means the use of or reference to an aspect of an individual's persona … [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  *Id.*

## VI.    South Dakota

20.    South Dakota's misappropriation statute, S.D. Codified Laws § 21-64-1, *et seq.* (the "South Dakota Statute"), states that: "No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity."  S.D. Codified Laws § 21-64-2.

21.    Under the South Dakota Statute, "commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity."  *Id.* § 21-64-1(1).

22.    "Personality" is defined as "a living or deceased natural person who is a citizen of this state, or who died domiciled in this state whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose that serves to identify a specific person[.]"

23.    "Right of publicity" means "a personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism."  *Id.* § 21-64-1(3).

## VII.    Washington

24.    Washington's misappropriation statue, RCW 63.60.010, *et seq.* (the "Washington Statute"), establishes that in the state of Washington: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness."  RCW 63.60.010.

25.    Further, "Any person who uses or authorizes the use of a living or deceased individual's … name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right, has infringed such right." RCW 63.60.050.

26.     Under the Washington Statute, "individual" means "a natural person, living or dead."  RCW 63.60.020.

27.     "Person" is defined as "any natural person, firm, association, partnership, corporation, joint stock company, syndicate, receiver, common law trust, conservator, statutory trust, or any other concern by whatever name known or however organized, formed, or created, and includes not-for-profit corporations, associations, educational and religious institutions, political parties, and community, civic, or other organizations." *Id.*

28.     "Name" means the actual or assumed name, or nickname, of a living or deceased individual that is intended to identify that individual.  *Id.*

## VIII.  Puerto Rico

29.     Puerto Rico's misappropriation statute, 32 L.P.R. § 3151, *et seq.* (the "Puerto Rico Statute"), states that: "Any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages."  32 L.P.R. § 3152.

30.     Under the Puerto Rico Statute, "likeness" is defined as the "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique." 32 L.P.R. § 3151.

31.     "Commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market."  32 L.P.R. §3152(h).

32.     "Person" is defined as a "Natural person, living or deceased, regardless of the previous use of his/her likeness for commercial purposes. It includes any legal entity that holds the rights of a person's likeness through a license or by transfer of publicity rights." *Id.*

## **PARTIES**

33.     Plaintiff Reggie Holder is a citizen of Alabama who resides in Birmingham, Alabama.  Plaintiff Holder has been a subscriber of *Vanity Fair* magazine intermittently for several years.

34.     Plaintiff Aaryn Johnson is a citizen of Alabama who resides in Birmingham, Alabama.  Plaintiff Johnson has been a subscriber of *Vanity Fair* magazine for approximately six months, and a subscriber of *Vogue* magazine for approximately two years.

35.     Plaintiff Gloria Garcia is a citizen of California who resides in Fair Oaks, California.  Plaintiff Garcia has been a subscriber of *The New Yorker* magazine for over two years.

36.     Plaintiff Linda Dodd is a citizen of Indiana who resides in Indianapolis, Indiana. Plaintiff Dodd has been a subscriber of *Vanity Fair* magazine for over ten years.

37.     Plaintiff Rochelle Krugler is a citizen of Nevada who resides in Henderson, Nevada.  Plaintiff Krugler has been a subscriber of *Vogue* magazine for approximately one year.

38.     Plaintiff Lisa Sheridan is a citizen of Ohio who resides in Mt. Healthy, Ohio. Plaintiff Sheridan has been a subscriber of *Vanity Fair* magazine for approximately three years.

39.     Plaintiff Scott German is a citizen of South Dakota who resides in Peever, South Dakota.  Plaintiff German has been a subscriber of *Vanity Fair* magazine for approximately fifteen years.

40.     Plaintiff Ann-Marie Carlson is a citizen of Washington who resides in Fall City, Washington.  Plaintiff Carlson has been a subscriber of *Vanity Fair* magazine for approximately five years.

41.     Plaintiff Myriam Correa is a citizen of Puerto Rico who resides in Ponce, Puerto Rico.  Plaintiff Correa has been a subscriber of *Vanity Fair* magazine and *People* magazine for over one year.

42.     Defendant Advance Magazine Publishers Inc., d/b/a Condé Nast is a New York corporation with its principal place of business at 1 World Trade Center, New York, New York

10007.  Condé Nast does business throughout Alabama, California, Indiana, Nevada, Ohio, South Dakota, Washington, Puerto Rico, and the entire United States.

## JURISDICTION AND VENUE

43.     The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 members of each of the proposed Classes (defined below), the aggregate amount in controversy with respect to the claim alleged on behalf of each of the proposed Classes exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the Classes (including each of the Plaintiffs) is a citizen of a state different from Defendant.

44.     The Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and principal place of business in this District.

45.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391 because Defendant resides in and is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL CLAIMS

46.     Defendant directly sells its products and services to consumers in Alabama, California, Indiana, Nevada, Ohio, South Dakota, Washington, and Puerto Rico.

47.     Consumers can purchase subscriptions to Defendant's publications through the Internet, telephone, or mail.  Regardless of how the consumer subscribes, Defendant never requires the individual to read or agree to any terms of service, privacy policy, or agreement authorizing Defendant to use his or her name or any aspect of his or her identity on or in connection with its Data Brokerage Products or for any other commercial purposes.

48.     Defendant maintains a vast digital database comprised of its customers' names, basic demographic information (e.g., home address), and magazine subscription histories and preferences.

49.     Defendant discloses its magazine subscribers' names and other identifying information, including but not limited to those subscribers' home addresses, to data aggregators and appenders, which then provide Defendant with supplemental information, such as—among

many other possible data points—sex, age, race, and political party, about each Condé Nast subscriber that they have separately collected.

50.     Defendant then packages this information into its Data Brokerage Products that are sold, licensed, rented, exchanged, and otherwise disclosed to its various Data Brokerage Clients. On a per record basis, the information includes basic identifying information about each of Condé Nast's subscribers (name, address, magazines subscribed to, among other such details) along with additional information received from the data aggregators and appenders discussed above.

51.     These Data Brokerage Products are offered for sale in, and, on information and belief, ultimately sold and entered into commerce throughout, Alabama, California, Indiana, Nevada, Ohio, South Dakota, Washington, and Puerto Rico, as well as elsewhere throughout the United States.

52.     Defendant also discloses its Data Brokerage Products to data cooperatives, which in turn give Defendant access to their own subscription list databases.

53.     Selling Data Brokerage Products comprised of its customers' names and subscriber information, as detailed above, constitutes a commercial use of its customers' identities on or in connection with goods, merchandise, or products under each of the aforementioned statutes.

54.     As the subjects of commercial transactions, the aspects of Plaintiffs' identities that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value.

55.     Because Condé Nast does not seek its customers' consent, written or otherwise, prior to using their names and identities on or in connection with its Data Brokerage Products, its customers remain unaware that their identities are being trafficked on the open market in this way.

56.     By using Plaintiffs' and the Class members' names and identities on and in connection with its Data Brokerage Products, without their prior consent, Defendant has directly

violated (and continues to directly violate) the Alabama Statute, the California Statute, the Indiana Statute, the Nevada Statute, the Ohio Statute, the South Dakota statute, the Washington Statute, and the Puerto Rico statute.

57.     Defendant has knowingly, intentionally, and willfully violated these statutes. Plaintiffs are informed and believe that, during the time period relevant to this action, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, directed and oversaw the compilation and assembly of the Data Brokerage Products from its customer database, the use of the names and identities of Plaintiffs and the members of the Classes on or in connection with such Data Brokerage Products, and the advertising and sales of such Data Brokerage Products to various third parties, including to its Data Brokerage Clients. Defendant has reaped, and continues to reap, significant profits from its nonconsensual sales of Data Brokerage Products containing the names and likenesses, personas, or identities, along with other personally identifying attributes of Plaintiffs and the members of the Classes.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs Reggie Holder and Aaryn Johnson seek to represent a class defined as all Alabama residents who appear in any of Condé Nast's Data Brokerage Products (the "Alabama Class").

59.     Plaintiff Gloria Garcia seeks to represent a class defined as all California residents who appear in any of Condé Nast's Data Brokerage Products (the "California Class").

60.     Plaintiff Linda Dodd seeks to represent a class defined as all Indiana residents who appear in any of Condé Nast's Data Brokerage Products (the "Indiana Class").

61.     Plaintiff Rochelle Krugler seeks to represent a class defined as all Nevada residents who appear in any of Condé Nast's Data Brokerage Products (the "Nevada Class").

62.     Plaintiff Lisa Sheridan seeks to represent a class defined as all Ohio residents who appear in any of Condé Nast's Data Brokerage Products (the "Ohio Class").

63.     Plaintiff Scott German seeks to represent a class defined as all South Dakota residents who appear in any of Condé Nast's Data Brokerage Products (the "South Dakota Class").

64.     Plaintiff Ann-Marie Carlson seeks to represent a class defined as all Washington residents who appear in any of Condé Nast's Data Brokerage Products (the "Washington Class").

65.     Plaintiff Myriam Correa seeks to represent a class defined as all Puerto Rico residents who appear in any of Condé Nast's Data Brokerage Products (the "Puerto Rico Class").

66.     Collectively, the classes are referred to as the "Classes."

67.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of each of the Classes number in the hundreds of thousands.  The precise number of class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

68.     Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to:

   a.   Whether Condé Nast uses class members' names, likenesses, personalities, personas, and other indica of identity on or in its Data Brokerage Products;

   b.   Whether the conduct described herein constitutes a violation of Ala. Code § 6-5-770, *et seq.*;

   c.   Whether the conduct described herein constitutes a violation of Cal. Civ. Code § 3344;

   d.   Whether the conduct described herein constitutes a violation of IC 32-36-1-1, *et seq.*;

   e.   Whether the conduct described herein constitutes a violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*;

    f.    Whether the conduct described herein constitutes a violation of Ohio Rev. Code § 2741.01, *et seq.*;

    g.    Whether the conduct described herein constitutes a violation of S.D. Codified Laws § 21-64-1, *et seq.*;

    h.    Whether the conduct described herein constitutes a violation of RCW 63.60.010, *et seq.*; and

    i.    Whether the conduct described herein constitutes a violation of 32 L.P.R. § 3151, *et seq*; and

    j.    Whether Plaintiffs and the Classes are entitled to injunctive relief.

69.    The claims of the named Plaintiffs are typical of the claims of the Classes.

70.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of class members will be fairly and adequately protected by Plaintiffs and their counsel.

71.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Classes. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

72.     Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Ala. Code § 6-5-770, *et seq.***
**(By Plaintiffs Reggie Holder and Aaryn Johnson,**
**Individually and on Behalf of the Alabama Class)**

73.     Plaintiffs Reggie Holder and Aaryn Johnson incorporate by reference and re-allege herein all paragraphs alleged above.

74.     Plaintiffs Holder and Johnson bring this claim individually and on behalf of the members of the Alabama Class.

75.     Ala. Code. § 6-5-770, *et seq.,* prohibits an entity or individual from using another individual's name or other indica of identity on or in its products, goods, merchandise, or services without the prior consent.

76.     Liability under the Alabama Right to Publicity is found "without regard as to whether the use is for profit or not for profit."

77.     Plaintiffs Holder and Johnson and the Alabama Class members each subscribed to one or more of Defendant's publications while residing in Alabama.

78.     As shown above, Defendant used Plaintiff Holder's, Plaintiff Johnson's, and the putative Alabama Class members' names and indica of identity on or in its Data Brokerage Products without the consent of Plaintiffs or the Alabama Class members.

79.     Plaintiffs Holder and Johnson are domiciled and suffered injury in Alabama.

80.     Defendant has sold these aspects of Plaintiffs Holder and Johnson and the Alabama Class's indica of identities intentionally, willfully, and knowingly.

81.     Based upon Defendant's violation of Ala. Code § 6-5-770, *et seq.*, Plaintiff Holder, Plaintiff Johnson, and members of the Alabama Class are entitled to (1) an injunction

requiring Defendant to cease using Plaintiff Holder's, Plaintiff Johnson's, and members of the Alabama Class's names and any indica of their identities on or in connection with its products, goods, merchandise, and/or services, (2) statutory damages in the amount of $5,000 per violation to Plaintiff Holder, Plaintiff Johnson and the members of the Alabama Class, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses under Ala. Code § 12-19-272(a).

**SECOND CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code § 3344**
**(By Plaintiff Gloria Garica,**
**Individually and on Behalf of the California Class)**

82.     Plaintiff Gloria Garcia incorporates by reference and re-alleges herein all paragraphs alleged above.

83.     Plaintiff Garcia brings this claim individually and on behalf of the members of the California Class.

84.     Cal. Civ. Code § 3344 prohibits an entity or individual from using another individual's "name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent[.]"

85.     Plaintiff Garcia and the California Class members are each a natural person and thus a "person" within the meaning of Cal. Civ. Code § 3344(a).

86.     Plaintiff Garcia and the California Class members each subscribed to one or more of Defendant's publications while residing in California.

87.     At no time before or at the time Plaintiff Garcia (or the members of the California Class) purchased subscriptions to Defendant's publications did Defendant notify any of them that it would use their name or identities "on or in products, merchandise, or goods" by selling Data Brokerage Products on or in which Defendant used their name or identities (or other personally identifying attributes, including home address and title of the publication subscribed to, gender, age, ethnicity, income, political party, religion, and charitable donation history). *See* Cal. Civ. Code § 3344(a). Plaintiff Garcia and the members of the California Class have never consented

to Defendant using their names or identities "on or in products, merchandise, or goods." *See id.*

88.     After Plaintiff Garcia and the members of the California Class purchased subscriptions to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly sold Data Brokerage Products containing their names and identities (among other identifying and highly sensitive personal information which, *inter alia*, identified each of them as an individual to whom Defendant had sold a subscription to a particular publication) to various third party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and others, without first obtaining consent from (or even giving prior notice of these practices to) Plaintiff Garcia or any member of the California Class.

89.     The Data Brokerage Products that Defendant knowingly sold and continues to sell on the open market, to anyone interested in purchasing them, constitute "products, merchandise, or goods" within the meaning of Cal. Civ. Code § 3344(a).

90.     Defendant knowingly "use[d]" and continues to "use" the names and identities of Plaintiff Garcia and the other California Class members "on or in" such Data Brokerage Products. *See id*.

91.     Defendant's unauthorized use of the names and identities of Plaintiff Garcia and the other California Class members on its Data Brokerage Products, as alleged herein, did not constitute "use[s] of . . . name[s] . . . or likeness[es] in connection with any news, public affairs, or sports broadcast or account, or any political campaign[.]"  Cal. Civ. Code §3344(d).

92.     By and through these actions, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly "use[d] another's name . . . or likeness . . . on or in products, merchandise, or goods," without such person[s'] prior consent," in direct violation of § 3344(a).

93.     Plaintiff Garcia and the other California Class members have been injured, in California, from the violations of their rights of publicity that they suffered as a result of Defendant's nonconsensual use of their names and identities in the manner described herein.

94.     Based upon Defendant's violation of Cal. Civ. Code § 3344, Plaintiff Garcia seeks: (1) $750.00 in statutory liquidated damages or actual damages, whichever is greater, as well as any profits from Defendant's unauthorized uses of their and the California Class members' names and identities that are attributable to such uses and are not taken into account in computing any actual damages, for themselves and each California Class member pursuant to §3344(a); (2) an award of punitive damages pursuant to §3344(a); (3) a declaration that Defendant's conduct described herein violates §3344(a); (4) an injunction prohibiting Defendant from further using the names or identities of Plaintiff Garcia or any of the California Class members on or in the Data Brokerage Products that it sells, and requiring Defendant to obtain prior consent from its California customers prior to doing so in the future; and (5) costs and reasonable attorneys' fees pursuant to §3344(a).

### THIRD CLAIM FOR RELIEF
### Violation of IC 32-36-1-1, *et seq.*
### (By Plaintiff Linda Dodd,
### Individually and on Behalf of the Indiana Class)

95.     Plaintiff Linda Dodd incorporates by reference and re-alleges herein all paragraphs alleged above.

96.     Plaintiff Dodd brings this claim individually and on behalf of the members of the Indiana Class.

97.     IC 32-36-1-1, *et seq.* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or connection with a product, merchandise, goods, services or commercial activities."

98.     Plaintiff Dodd and the Indiana Class members each subscribed to one or more of Defendant's publications while residing in Indiana.

99.     As shown above, Defendant used Plaintiff Dodd's and the putative Indiana Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff Hill or the Indiana Class members.

100.    Defendant has sold these aspects of Plaintiff Dodd's and the Indiana Class's identities intentionally, willfully, and knowingly.

101.    As the subject of a commercial transaction, the aspects of Plaintiff Dodd's and the Indiana Class's identities that Defendant uses on or in connection with its products, services, or other commercial activities have commercial value.

102.    Based upon Defendant's violation of IC 32-36-1-1, *et seq.*, Plaintiff Dodd and members of the Indiana Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Dodd's and members of the Indiana Class's names and any aspects of their identities on or in connection with its products, goods, merchandise, services, and/or commercial activities (2) statutory damages in the amount of $1,000 per violation to Plaintiff Dodd and the members of the Indiana Class, (3) an award of treble or punitive damages, and (4) an award of reasonable attorneys' fees, costs, and reasonable expenses under IC 32-36-1-10 and IC 32-36-1-12.

**FOURTH CLAIM FOR RELIEF**
**Violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.***
**(By Plaintiff Rochelle Krugler,**
**Individually and on Behalf of the Nevada Class)**

103.    Plaintiff Rochelle Krugler incorporates by reference and re-alleges herein all paragraphs alleged above.

104.    Plaintiff Krugler brings this claim individually and on behalf of the members of the Nevada Class.

105.    Nev. Rev. Stat. Ann. § 597.790 states that "[a]ny commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]" "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

106.    Plaintiff Krugler and the Nevada Class members each subscribed to one or more of Defendant's publications while residing in Nevada.

107.    As shown above, Defendant used Plaintiff Krugler's and the putative Nevada Class members' names and identities on or in its Data Brokerage Products, and thus for a commercial use, without the consent of Plaintiff Krugler or the Nevada Class members.

108.    Plaintiff Krugler is domiciled and suffered injury in Nevada.

109.    Defendant has sold these aspects of Plaintiff Krugler's and the Nevada Class's identities intentionally, willfully, and knowingly.

110.    Based upon Defendant's violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*, Plaintiff Krugler and members of the Nevada Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Krugler's and members of the Class's names and any aspects of their identities on or in its products, goods, merchandise, and/or services, (2) statutory damages in the amount of not less than $750 per violation to Plaintiff Krugler and the members of the Nevada Class, and (3) an award of punitive damages or exemplary damages, under Nev. Rev. Stat. Ann. § 597.810.

**FIFTH CLAIM FOR RELIEF**
**Violation of Ohio Rev. Code § 2741.01, *et seq.***
**(By Plaintiff Lisa Sheridan,**
**Individually and on Behalf of the Ohio Class)**

111.    Plaintiff Lisa Sheridan incorporates by reference and re-alleges herein all paragraphs alleged above.

112.    Plaintiff Sheridan brings this claim individually and on behalf of the members of the Ohio Class.

113.    Ohio Rev. Code § 2741.01, *et seq.,* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities" without prior consent.

114.    Plaintiff Sheridan and the Ohio Class members each subscribed to one or more of Defendant's publications while residing in Ohio.

115.    Plaintiff Sheridan and the Ohio Class members are each a natural living person and therefore an "individual" within the meaning of Ohio Rev. Code. § 2741.02.

116.    Prior to and at the time Plaintiff Sheridan and the Ohio Class members subscribed to Defendant's publications, Defendant did not notify any of them that it would use their names or other identifying attributes "on or in connection with" the Data Brokerage Products that it sells, and none of them has given Defendant authorization to do so.

117.    After Plaintiff Sheridan and the Ohio Class members subscribed to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, knowingly advertised and sold Data Brokerage Products containing the names, identities, and other personally identifying attributes to various third-party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and various other persons interested in buying them, without first obtaining written consent to these practices from (or even giving prior notice to) Plaintiff Sheridan or any of the Ohio Class members.

118.    The name "Lisa Sheridan" is one of the identifying attributes Defendant used on or in connection with the Data Brokerage Products that it sold and continues to sell, are "the actual, assumed, or clearly identifiable name[s] or reference[s] [] that identif[y]" Plaintiff Sheridan as a person.  Accordingly, Defendant used the  "name[s]" or "likeness[es]," and thus the "persona[s]," of Plaintiff Sheridan within the meaning of Ohio Rev. Code § 2741.01(A), (C).

119.    As alleged above throughout, Defendant knowingly used the names or identities (and thus the personas) of Plaintiff Sheridan and the Ohio Class members on or in connection with its products, merchandise, goods, or services, and thus for "commercial purposes" within the meaning of Ohio Rev. Code § 2741.01(b)(1).

120.    Defendant did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiff Sheridan or any of the Ohio Class members prior to using their names or identities (*i.e.*, personas) for commercial purposes within the meaning of Ohio Rev. Code § 2741.01(F).

121.    Accordingly, by using the "name[s]," i.e., "aspect[s] of [the] persona[s]," of Plaintiff Sheridan and the Ohio Class members "for a commercial purpose . . . during their

lifetime[s]," and while they resided in Ohio, without "written consent," Defendant directly violated Ohio Rev. Code § 2741.01(A), (C), 2741.02(A)-(B).

122.    Plaintiff Sheridan and the Ohio Class members have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Defendant's nonconsensual use of their names and identities (and thus their personas) in this way.

123.    Based upon Defendant's violation of Ohio Rev. Code § 2741.01, *et seq.*, Plaintiff Sheridan seeks: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to themselves and each Ohio Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to using their names or identities on or in the Data Brokerage Products that it advertises and sells pursuant to Ohio Rev. Code. § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

**SIXTH CLAIM FOR RELIEF**
**Violation of S.D. Codified Laws § 21-64-1, *et seq.***
**(By Plaintiff Scott German,**
**Individually and on Behalf of the South Dakota Class)**

124.    Plaintiff Scott German incorporates by reference and re-alleges herein all paragraphs alleged above.

125.    Plaintiff German brings this claim individually and on behalf of the members of the South Dakota Class.

126.    S.D. Codified Laws § 21-64-1 *eg seq.,* prohibits an entity or individual from using "any aspect of a personality's right of publicity for commercial purpose … without the express written consent of the personality[.]"  "Commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, services, or commercial activity[.]"  S.D. Codified Laws § 21-64-1.

127.    "Scott German," which Defendant used on the Data Brokerage Products that it has sold (and continues to sell), is the "name" that specifically identifies Plaintiff German.  *See* S.D. Codified Laws § 21-64-1(2).

128.    Plaintiff German and the South Dakota Class members are each a person and a citizen of the state of South Dakota whose name and identity have commercial value; Plaintiff German and the South Dakota Class members are thus each a "personality" within the meaning of S.D. Codified Laws § 21-64-1(2).

129.    Plaintiff German and the South Dakota Class members each have a "right of publicity," a property interest, in his or her "name" and "likeness" within the meaning of S.D. Codified Laws § 21-64-1(3).

130.    Plaintiff German and the South Dakota Class members each subscribed to one or more of Defendant's publications while residing in South Dakota.

131.    At no time before or at the time Plaintiff German or any of the South Dakota Class members purchased a subscription to one of Defendant's publications did Defendant notify any of them that it would use their "property interest in [their] name . . . [or] likeness" in connection with "a product, merchandise, goods, service, or commercial activity" by using their name, identity, and other personally identifying attributes (including home address and title of the publication subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history) – on or in connection with the Data Brokerage Products that Defendant sold and continues to sell, *see* S.D. Codified Laws §§ 21-64-1 & 21-64-1, and none of them has ever provided "express written consent" prior to Defendant using their "property interest in [their] name . . . [or] likeness" for "commercial purposes" in this way.  *See id.*

132.    During the relevant statutory period, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, sold Data Brokerage Products containing the names, identities, and other personally identifying attributes of Plaintiff German and the South Dakota Class members to various third parties, including to data aggregators, data

appenders, data cooperatives, and others, without first obtaining the express written consent of Plaintiff German or any of the South Dakota Class members to authorize Defendant to use their names, identities, or other personally identifying attributes in this way.

133.    Defendant's sales of Data Brokerage Products containing the names and identities of Plaintiff Jones and the South Dakota Class members, on the open market to anyone interested in purchasing them, constituted the use of "an[] aspect of" the "right[s] of publicity" of Plaintiff German and the South Dakota Class members for "commercial purposes" within the meaning of S.D. Codified Laws §21-64-2.

134.    Defendant failed to obtain the "express written consent" of Plaintiff German or any of the South Dakota Class members prior to using "an[] aspect of [their] right[s] of publicity for . . . commercial purpose[s]" in the manner alleged herein. *Id.*

135.    By and through these actions, Defendant used "an[] aspect of" the "right[s] of publicity" of Plaintiffs German and the South Dakota Class members "for a commercial purpose . . . without [their] express written consent," in direct violation of S.D. Codified Laws §21-64-1, *et seq.*

136.    Defendant's nonconsensual use of the rights of publicity of Plaintiff German and the South Dakota Class members for commercial purposes did not constitute "the use of [any] personality's name . . . [or] likeness" in any "[l]iterary work," "[m]aterial that has political or newsworthy value," or an "[a]dvertisement of commercial announcement" for any use permitted by S.D. Codified Laws §21-64-6, nor did it constitute "the use of a[ny] personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism in connection with a broadcast or reporting of an event or a topic of general or public interest[.]" S.D. Codified Laws §§21-64-6 & 21-64-8.

137.    Plaintiff German and the South Dakota Class members have been injured from the violations of their rights of publicity in the manner described herein.

138.    Based upon Defendant's violations of S.D. Codified Laws § 21-64-1, *et seq.*, Plaintiff German seeks: (1) statutory damages of $1,000.00 per violation (or of $3,000.00 per

violation that the Court finds was knowing, willful or intentional) pursuant to S.D. Codified Laws §21-64-5(2) & (4); (2) a declaration that Defendant's conduct described herein violates South Dakota's Right of Publicity Law; (3) an injunction prohibiting Defendant from further using the rights of publicity of its South Dakota customers in connection with the Data Brokerage Products that it sells, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws § 21-64-5(1); and, (4) costs and reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**Violation of RCW 63.60.010, *et seq.***
**(By Plaintiff Ann-Marie Carlson,**
**Individually and on Behalf of the Washington Class)**

139.    Plaintiff Ann-Marie Carlson incorporates by reference and re-alleges herein all paragraphs alleged above.

140.    Plaintiff Carlson brings this claim individually and on behalf of the members of the Washington Class.

141.    RCW 63.60.010, *et seq.,* prohibits an entity or individual from using another individual's "name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right[.]"

142.    Under the Washington Statute, "[a]n infringement may occur under this section without regard to whether the use or activity is for profit or not for profit."  RCW 63.60.050.

143.    Plaintiff Carlson and the Washington Class members each subscribed to one or more of Defendant's publications while residing in Washington.

144.    As shown above, Defendant used Plaintiff Carlson's and the putative Washington Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff Carlson or the Washington Class members.

145.    Plaintiff Carlson is domiciled and suffered injury in Washington.

146.    Defendant has sold these aspects of Plaintiff Carlson and the Washington Class's identities intentionally, willfully, and knowingly.

23

147.     As the subject of a commercial transaction, the aspects of Plaintiffs Carlson's and the Washington Class's identities that Defendant uses on or in its goods, merchandise, or products have commercial value.

148.     Based upon Defendant's violation of RCW 63.60.010, *et seq.*, Plaintiff Carlson and members of the Washington Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Carlson's and members of the Washington Class's names and any indica of their identities on or in connection with its goods, merchandise, or products, (2) statutory damages in the amount of $1,500 per violation to Plaintiff Carlson and the members of the Washington Class, and (3) an award of reasonable attorneys' fees, court costs, and reasonable expenses under RCW 63.60.060.

**EIGHTH CLAIM FOR RELIEF**
**Violation of 32 L.P.R. § 3151, *et seq.***
**(By Plaintiff Myriam Correa,**
**Individually and on Behalf of the Puerto Rico Class)**

149.     Plaintiff Myriam Correa incorporates by reference and re-alleges herein all paragraphs alleged above.

150.     Plaintiff Correa brings this claim individually and on behalf of the members of the Puerto Rico Class.

151.     32 L.P.R. § 3151, *et seq.* prohibits an entity or individual from using another individual's "name" or "any representation of a person" for "commercial, trade, or advertising purposes without the previous consent of said person[.]"

152.     Plaintiff Correa and the Puerto Rico Class members are each a "person" within the meaning of 32 L.P.R. § 3151(f).

153.     Plaintiff Correa and the Puerto Rico Class members each subscribed to one or more of Defendant's publications while residing in Puerto Rico.

154.     Defendant is a corporation and thus a "juridical person" within the meaning of 32 L.P.R. § 3152.

155.    The Data Brokerage Products that Defendant has sold and continues to sell, on the open market to anyone interested in purchasing them, constitute "product[s], merchandise, good[s], or service[s]" within the meaning of 32 L.P.R. §3151(h).

156.    As shown above, Defendant used the "names" and other personally identifying "attributes" of Plaintiff Correa and each of the putative Puerto Rico Class members on or in its Data Brokerage Products.

157.    The name "Myriam Correa," which Defendant used on the Data Brokerage Products that it has sold and continues to sell, is the "name . . . through which an average observer or listener may identify" Plaintiff Correa.  32 L.P.R. §3151(c).  Moreover, the other personally identifying information pertaining to Plaintiff Correa that Defendant included on the Data Brokerage Products that it sold and continues to sell – including her address, gender, age, ethnicity, income, religion, and political party – also constituted, individually or collectively, "attribute[s]" of Plaintiff Correa "through which an average observer or listener may identify" him. *Id.*  Accordingly, by and through the actions alleged herein, Defendant used the "likeness" of Plaintiff Correa within the meaning of 32 L.P.R. §3151(c).

158.    At no time before or at the time Plaintiff Correa or any member of the Puerto Rico Class purchased subscriptions to Defendant's publications did Defendant notify any of them that it would use their names or other personally identifying attributes "in connection with . . . [the] sale of" its Data Brokerage Products, which are "product[s], merchandise, good[s], or service[s]" within the meaning of 32 L.P.R. § 3152 & 32 L.P.R. §3151(c), (h), and none of them has ever provided their "previous consent" to using their "likenesses" for "commercial purposes" in the manner alleged herein.  *See* 32 L.P.R. §3152 & 32 L.P.R. §3151.

159.    Because the Data Brokerage Products that Defendant sold and continues to sell contained the names and other personally identifying attributes of Plaintiff Correa and the members of the Puerto Rico Class, and identified each such person as having been previously sold a subscription to a particular publication published by Defendant, Defendant used the names and other identifying attributes of Plaintiff Correa and the members of the Puerto Rico Class "in

connection with" its sales and rentals of the Data Brokerage Products (as well as in connection with the past sales of magazine subscriptions to Plaintiff Correa and Puerto Rico Class members). *See* 32 L.P.R. § 3151(h). Accordingly, Defendant used the identities of Plaintiff Correa and the members of the Puerto Rico Class for "commercial purposes" or for "trade purposes" within the meaning of the 32 L.P.R. § 3152.

160.    By and through these actions, Defendant knowingly, deliberately, and with reckless disregard for the rights of Plaintiff Correa and the Puerto Rico Class members, "use[d] [each of their] likeness[es] for commercial [or] trade . . . purposes without the previous consent of said person[s]," in direct violation of 32 L.P.R. § 3152.

161.    Defendant's nonconsensual use of the identities of Plaintiff Correa and each of the Puerto Rico Class members in connection with the Data Brokerage Products that it has sold and continues to sell, as alleged herein, did not constitute uses of their identities "as part of a news report, political expression, sporting, or artistic event transmission, or presentation with a legitimate public interest, and where said likeness is not used with commercial or publicity purposes." 32 L.P.R. § 3157(a).

162.    Defendant acted with "[t]otal carelessness or failure to adhere to a minimal standard of care that raises a presumption of indifference to consequences, implying reckless disregard," in the course of using, without consent, the identities of Plaintiff Correa and each of the Puerto Rico Class members in connection with its sales of the Data Brokerage Products. *See* 32 L.P.R. § 3151(h). Moreover, Defendant had every "reason for knowing or believing that [its] activities," as alleged here, "constituted a violation of the [] publicity rights" of Plaintiff Correa and each of the Puerto Rico Class members, *see* 32 L.P.R. § 3153, because Defendant, on information and belief, was aware of the existence of and the rights afforded under Puerto Rico's Right of Publicity Act, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation thereof. Defendant has nonetheless refused to cease using its Puerto Rico subscribers' identities for commercial purposes without their consent in the manner described herein.

163.    Plaintiff Correa brings this action, individually and on behalf of the Puerto Rico Class, "one (1) year following the date on which she first became aware or should have gained knowledge of the occurrence of the facts that constitute grounds for [the] cause of action [alleged herein] and serves as the foundation for such action or procedure." 32 L.P.R. § 3156.

164.    Plaintiff Correa and the members of the Puerto Rico Class have been injured, in Puerto Rico, from the violations of their rights of publicity that they suffered as a result of Defendant's nonconsensual use of their identities in the manner described herein.

165.    Based upon Defendant's violations of 32 L.P.R. § 3151, *et seq.*, Plaintiff Correa seeks: (1) statutory damages of $100,000 per violation determined to be deliberate or due to gross negligence (or of $20,000 per violation not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation, for herself and each Puerto Rico Class member pursuant to 32 L.P.R. § 3153; (2) a declaration that Defendant's conduct described herein violates Puerto Rico's Right of Publicity Act pursuant to 32 L.P.R. § 3153; (3) an injunction prohibiting Defendant from further using the identities of its Puerto Rico customers in connection with the Data Brokerage Products that it sells, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to doing so in the future, pursuant to 32 L.P.R. §3153 and 32 L.P.R. §3152; and (4) costs and reasonable attorneys' fees pursuant to pursuant to 32 L.P.R. §3153.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs as the representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent members of the Classes;

b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For all injunctive relief the court finds appropriate; and

h.    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  February 22, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
      Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com
jdiamond@bursor.com

J. Eli Wade-Scott*
Michael W. Ovca*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ewadescott@edelson.com
movca@edelson.com

*Counsel for Plaintiffs and the Proposed Classes*

**Pro Hac Vice* forthcoming

28